<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CORPS LOGISTICS, LLC, et al.,

     Plaintiffs,

     v.

RAYMOND DUTIL, et al.,

     Defendants.

Civil Action No. 20-6683 (MAS) (ZNQ)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

 This matter comes before the Court upon Defendants Bewegen Technologies, Inc. ("Bewegen") and Raymond Dutil's ("Dutil") (collectively, "Defendants") Motion to Dismiss Plaintiffs Corps Logistics, LLC ("Corps"), Jim Duffney, James P. Duffney, and Christopher Duffney's (collectively, "Plaintiffs") Amended Complaint. (ECF No. 10.) Plaintiffs opposed (ECF No. 17), and Defendants replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Rule 78.1. For the reasons set forth herein, Defendants' Motion to Dismiss is granted in part and denied in part.

**I.  BACKGROUND**

 Corps is a New Jersey "installer and operator of community-based bike share programs" in several cities throughout California, Utah, South Carolina, North Carolina, Maryland, Virginia, and Massachusetts (the "Bike Share Cities"). (Am. Compl. ¶¶ 1–2, ECF No. 1-1.) Jim Duffney is Corps's founder and CEO, and James P. and Christopher Duffney were employees (Jim, James P., and Christopher Duffney, collectively, the "Duffneys"). (*Id.* ¶¶ 3–5.) Dutil co-founded Bewegen, a Canadian corporation that "sells and implements public bike-share systems." (*Id.* ¶¶ 6–7.)

Corps and Bewegen entered into a contract on April 1, 2018 whereby Corps agreed to "provide services for the [Bike Share] Cities' bike sharing systems[,] specifically in the areas of installation, billing, collecting, technical support, bike moving, cleaning, promotion, maintenance[,] and customer service." (*Id.* ¶ 18.) Under this contract, Bewegen paid Corps monthly fees while Corps would assume the expenses of the bike sharing systems. (*Id.* ¶ 19.) "From time to time, Corps . . . would be paid for additional and premium services, the use of Corps['s] . . . labor force[,] and the usage of assets owned by Corps[.]" (*Id.*)

On March 2, 2020, the parties entered into the Memorandum of Understanding ("MOU"), which replaced the original contract and provided that Corps would sell its assets to Bewegen for $500,000. (*Id.* ¶¶ 20, 22, 25–27.)[1] The MOU also set forth employment positions and salaries for the Duffneys. (*Id.* ¶¶ 31–33.) That same day, the parties also entered into the Final Settlement, which set forth Corps's open invoices for Bewegen totaling $190,000.[2] (*Id.* ¶¶ 35–37.) The Final Settlement required Bewegen to pay $50,000 towards the open invoices on March 9, 2020, and the remaining $140,000 on March 23, 2020. (*Id.* ¶ 37.) According to Plaintiffs, (1) despite the transfer of assets, Defendants "have failed to pay any portion of the" $500,000 asset transfer payment, (*id.* ¶ 30), (2) the Duffneys have not been paid for their work, (*id.* ¶ 34), and (3) Defendants have only paid Plaintiffs $50,000 of the $190,000 for the open invoices, (*id.* ¶ 38).

On April 30, 2020, Plaintiffs filed a complaint in the Superior Court of New Jersey, Law Division, Monmouth County. (Notice of Removal ¶ 1, ECF No. 1.) Plaintiffs amended their

---

[1] "Section 1 of the MOU sets forth the valuation of assets as $300,000.00 for Corps['s] . . . trucks, trailers, tools, etc.[,] and $200,000 for goodwill." (Am. Compl. ¶ 26.)

[2] Throughout the Amended Complaint, Plaintiffs refer to both the MOU and Final Settlement as the MOU. (*See generally* Am. Compl.) Based upon the agreements, which are attached to the Amended Complaint, it appears that the MOU and Final Settlement are distinct documents. (*See* MOU and Final Settlement *19–22, Ex. A to Am. Compl., ECF No. 1-1 (page numbers preceded by an asterisk refer to the page number of the ECF header).)

complaint on or about May 27, 2020. (*Id.*; *see also* Am. Compl. 16.) On June 1, 2020, Defendants removed the action to this Court. (*See generally* Notice of Removal.) Plaintiffs' Amended Complaint asserts: (1) breach of contract, (Am. Compl. ¶¶ 65–71); (2) breach of the implied covenant of good faith and fair dealing, (*id.* ¶¶ 72–75); (3) promissory estoppel, (*id.* ¶¶ 76–79); and (4) breach of the Duffneys' employment agreements, (*id.* ¶¶ 91–98). Plaintiffs also seek a declaratory judgment that Defendants breached the MOU and Final Settlement, and that Plaintiffs are entitled to costs and attorneys' fees. (*Id.* ¶¶ 80–90.) Defendants now move to dismiss the Amended Complaint on several different grounds. (*See generally* Defs.' Moving Br., ECF No. 10-1.)

## II.     LEGAL STANDARD

### A.     Rule 12(b)(2)

For the purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that [personal] jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation marks and citation omitted). When the district court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* at 96 (internal citations omitted). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citation omitted). In order for the Court to assert personal jurisdiction over a defendant, "[t]he nature of the defendant's contacts with the forum state must be such that

3

the defendant 'should reasonably anticipate being haled into court there.'" *One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317, 322 (D.N.J. 1997) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "The purposeful availment requirement thus ensures that a defendant will not be haled into court solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another person." *Id.* (internal quotation marks and citations omitted).

### B.     *Forum Non Conveniens*

In deciding a motion to dismiss based on *forum non conveniens*, courts must examine whether trial in the proposed forum would "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience[.]" *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). For a *forum non conveniens* dismissal to be appropriate, a defendant must first establish that there is an alternative forum for the dispute. "Once a defendant establishes that another forum is adequate (and available) to hear the case, the focus then shifts to the private and public interest factors catalogued in *Gulf Oil* and *Piper*." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991). The *forum non conveniens* factors are: (1) "the amount of deference to be afforded to plaintiffs' choice of forum"; (2) "the availability of an adequate alternative forum where defendants are amendable to process and plaintiffs' claims are cognizable"; (3) "relevant 'private interest' factors affecting the convenience of the litigants"; and (4) "relevant 'public interest' factors affecting the convenience of the forum." *Kisano*, 737 F.3d at 873; *see also Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200, 202 (3d Cir. 2017).

### C.     Rule 12(b)(6)

When analyzing a Rule 12(b)(6) motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note

of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

Second, the court must accept as true all of a plaintiff's well pleaded factual allegations and

construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578

F.3d 203, 210 (3d Cir. 2009). The court, however, may ignore legal conclusions or factually

unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S.

at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must

determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has

a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially

plausible claim "allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for

failure to state a claim, the "defendant bears the burden of showing that no claim has been

presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III.   **DISCUSSION**

### A.      **Specific Jurisdiction**[3]

Defendants first argue that the Court lacks specific jurisdiction over them in the instant

matter. (*See generally* Defs.' Moving Br. 11–15.) According to Defendants, "the only contact the

Plaintiffs allege to have existed between the claims in this action, and New Jersey, is that Plaintiffs

are domiciled in New Jersey." (*Id.* at 13.) Defendants maintain that "[n]othing in the [Amended]

Complaint indicates that Defendants should have anticipated being [haled] into [c]ourt in New

Jersey as a result of the MOU, Final Settlement, or otherwise[.]" (*Id.*) Instead, Defendants cite to

---

[3] Because the Court finds Defendants are subject to specific jurisdiction in this matter, it declines to conduct a general jurisdiction analysis and determine whether this instant matter is an "exceptional case" in which "a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).

several facts they assert demonstrate a lack of specific jurisdiction, including: (1) Dutil and Bewegen's Canadian citizenship, (2) Dutil and Bewegen's lack of business, property, or finances in New Jersey, (3) Dutil's lack of travel to New Jersey "for at least the last ten years," and (4) the MOU and Final Settlement's drafting and execution in Canada. (*Id.* at 13–15.) In opposition, Plaintiffs assert the following, *inter alia*, demonstrates the Court's specific jurisdiction over Defendants: (1) Dutil's e-mail communications directed to New Jersey, (2) the MOU's transfer of assets, several of which were located and registered in New Jersey, to Defendants, and (3) New Jersey being "the initial starting point for any work done by Corps . . . on behalf of Bewegen." (Pls.' Opp'n Br. 15–16, ECF No. 17.)

"The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have 'purposefully directed [its] activities' at the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Grimes v. Vitalink Comms. Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). Finally, if parts one and two are met, a court may consider whether exercising personal jurisdiction comports with the notions of "fair play and substantial justice." *Id.* (citations omitted). "The defendant need not be physically located in the state while committing the alleged acts." *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 528 (D.N.J. 2013) (citing *Burger King*, 471 U.S. at 476). "Nor is specific jurisdiction defeated merely because the bulk of the harm occurred outside the forum." *Id.* (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984)).

### 1.    Purposeful Availment

"A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not 'automatically establish sufficient minimum

contacts in the other party's home forum[.]'" *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478). Rather, factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479.

Here, Plaintiffs do not assert that the underlying bike sharing services the parties provided took place in New Jersey. (Am Compl. ¶¶ 2, 18.) Nor do they assert that the MOU and Final Settlement were executed in New Jersey. (*See generally id.*; *see generally* Jim Duffney Aff. ("Duffney Aff."), ECF No. 17-3.)[4] Plaintiffs do, however, submit an affidavit from Jim Duffney in support of their personal jurisdiction argument. According to Plaintiffs, the work performed on behalf of Defendants, and that is the subject of the Final Settlement's open invoice provisions, "originated out of New Jersey." (Duffney Aff. ¶ 56 ("New Jersey was the control center for all Bewegen work done by Corps Logistics."); Pls.' Opp'n Br. 16 ("New Jersey continued to be, as it was from the outset, the initial starting point for *any work* done by Corps Logistics on behalf of Bewegen." (emphasis added)).)[5] Furthermore, several of the assets that Defendants purchased pursuant to the MOU were located and registered in New Jersey. (Duffney Aff. ¶ 72; Pls.' Opp'n

---

[4] Plaintiffs make no assertion about where the MOU and Final Settlement were physically signed and executed. Defendants, however, maintain that the two agreements were signed in Montreal, Canada. (First Dutil Decl. ¶ 9, ECF No. 10-4.)

[5] Along those same lines, the MOU's employment provisions for the Duffneys related to work performed on behalf of Bewegen and that originated in New Jersey. (*See* Duffney Aff. ¶ 67 ("Part of my discussions with Dutil, while negotiating the MOU, related to my employment as an Ambassador for Bewegen as well as guaranteed work for my sons, Christopher Duffney and James Duffney."); *id.* ¶ 68 ("It was important for me, as a negotiating party, to have Christopher Duffney and James Duffney receive a benefit by way of a guaranteed salary as both had worked for Bewegen in an exemplary manner."); *see also* Pls.' Opp'n Br. 16 ("New Jersey continued to be, as it was from the outset, the initial starting point for *any work* done by Corps Logistics on behalf of Bewegen." (emphasis added)).)

Br. 5, 15–16.) Also pursuant to the MOU asset transfer provision, Defendants purchased Corps's goodwill for $200,000. (MOU and Final Settlement *19; Duffney Aff. ¶ 63.) Finally, Dutil directed e-mail communications relating to the MOU and Final Settlement to New Jersey. (Pls.' Opp'n Br. 15 (citing Duffney Aff. ¶ 70).)

Plaintiffs also detail a multi-year relationship between Corps and Bewegen that they allege preceded, and led to, the MOU and Final Settlement. For example, a former Bewegen CEO met with Jim Duffney in late 2014 "to discuss how [Duffney's] company and Bewegen could work together to bring bike share services to the United States." (Duffney Aff. ¶ 19.) This initial meeting and several others occurred in New Jersey. (*Id.* ¶¶ 19, 21–22.) From 2015 to 2018, the parties met with prospective bike sharing cities and gave presentations detailing their potential services. (*Id.* ¶¶ 28–31.) "Drafts of the presentations were sent from Bewegen to the New Jersey office of Corps" and discussions regarding best strategies were held while Jim Duffney was in New Jersey. (*Id.* ¶¶ 32–33.) Furthermore, "[w]hen cities would sign and finalize the Bewegen contracts, [the] said contracts were emailed to the New Jersey office of Corps Logistics. The New Jersey office of Corps Logistics maintained all Bewegen documents as well as Corps Logistics documents." (*Id.* ¶ 42.) Defendants also had Corps maintain a customer service call center and provide banking and data usage in New Jersey for the parties' bike sharing systems. (*Id.* ¶ 56.) Finally, negotiations between the parties for the two agreements that preceded the MOU and Final Settlement occurred while Jim Duffney was in New Jersey. (*Id.* ¶¶ 46–49, 57–59.)

While Defendants dispute some of Plaintiffs' assertions in support of their personal jurisdiction argument, (*see* Second Dutil Decl. ¶¶ 3–8, 10–13, ECF No. 18-1), at this stage of the litigation, Plaintiffs are "entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales*, 384 F.3d at 97). Here, the MOU and Final Settlement—both signed by Dutil on behalf of Bewegen—contained the

following provisions: (1) payments from Bewegen to Corps for Corps's assets, including its goodwill, (2) Bewegen employment terms and payments for the Duffneys, and (3) payments from Bewegen to Corps for open invoices. (MOU and Final Settlement *19–22.) Considering prior negotiations, the terms of the contracts, and the parties' actual course of dealing, *Burger King*, 471 U.S. at 479, the Court cannot hold that agreements in which Defendants (1) purchase several of a New Jersey company's New Jersey assets, including its goodwill,[6] and (2) pay New Jersey residents for work (3) originating in New Jersey do not establish minimum contacts with the State. *See Grand Ent. Grp.*, 988 F.2d at 482–83 (finding that an alleged contract regarding the transfer of foreign film rights "created rights and obligations among citizens of the forum and contemplated significant ties with the forum"). Moreover, the agreements preceding the MOU and Final Settlement involved meetings in, negotiations from, and work performed in New Jersey. *Compare Rowland v. Glob. LLC v. Good Clean Love, Inc.*, No. 15-5738, 2016 WL 952339, at *5 (D.N.J. Mar. 14, 2016) ("Defendant repeatedly called and emailed [p]laintiff in New Jersey and even met [p]laintiff in New Jersey to discuss the fees at issue in this case. Based on these contacts, a reasonable person should anticipate being haled into court in New Jersey."), *with Harrison v. Nerveda, LLC*, No. 15-1373, 2015 WL 5138478, at *5–6 (D.N.J. Aug. 31, 2015) (finding no personal jurisdiction where in-person contact between the parties took place outside of New Jersey and plaintiff "failed to specify the locations from which the parties conducted" their other communications). Finally, the Court cannot ignore the five-plus year relationship between Corps

---

[6] Although Corps's business outside of its dealings with Bewegen is unclear, the Court finds that the MOU's inclusion of Corps's goodwill in the asset transfer provision supports its finding of personal jurisdiction in the instant matter. *See Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304, 2009 WL 904010, at *15 (D.N.J. Mar. 31, 2009) ("The Supreme Court has defined goodwill as 'the expectancy of continued patronage.'" (quoting *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 555 (1993))); *Dugan v. Dugan*, 457 A.2d 1, 4 (N.J. 1983) (noting that goodwill has been defined to include "the right to continue the business *at the same place in which it has been established and where its reputation has been made*" (citation omitted)).

and Bewegen in its personal jurisdiction analysis. *See Control Screening LLC v. Tech. Application and Prod. Co*, 687 F.3d 163, 168 (3d Cir. 2012) (finding personal jurisdiction where, in addition to e-mail correspondence directed to New Jersey, the contract at issue "marked the continuation of an uninterrupted four[-]year business relationship between" the parties). The Court, accordingly, finds that Plaintiffs have adequately demonstrated that Defendants purposefully directed its activities to New Jersey.

### 2. Relatedness

For specific jurisdiction to exist, "the litigation must [also] 'arise out of or relate to' at least one of" a defendant's activities in the forum. *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros*, 466 U.S. at 414). "Although this is a distinct requirement, in this case the analysis is identical to the 'purposeful availment' analysis." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 265 (3d Cir. 2008) ("[The plaintiff] has not asserted that [the defendant] or her company has *any* connection to California aside from those associated with the causes of action for breach of contract and trademark infringement. Thus, if the first prong is satisfied, then the second prong is satisfied as well." (emphasis in original)). Here, Plaintiffs have not alleged any contacts between Defendants and New Jersey other than those associated with the instant action. Accordingly, the Court finds that Plaintiffs have satisfied the second element of the specific jurisdiction analysis.

### 3. Fair Play and Substantial Justice

"Having determined that minimum contacts exist, we next consider whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'" *O'Connor*, 496 F.3d at 324 (citation omitted). "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477); *see also Grand Ent. Grp.*, 988 F.2d at 483 ("The burden

on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). At this step of specific jurisdiction analysis, courts should consider: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and [t]he procedural and substantive interests of other nations." *O'Connor*, 496 F.3d at 324 (internal quotation marks and citations omitted).

Here, Defendants—although contained in their argument in support of dismissal pursuant to the doctrine of *forum non conveniens*—argue that the "practical inconveniences of maintaining this action in New Jersey are significant." (Defs.' Moving Br. 18.) According to Defendants, "[b]ecause none of the relevant conduct occurred in New Jersey, none of the sources of proof—documents, witnesses, or physical evidence—will be easily accessible here for either party. In contrast, all documents and witnesses related to Defendants' defenses against the meritless claims asserted by Plaintiffs are located in" Quebec. (*Id.* at 18–19.) Furthermore, Defendants appear to assert that New Jersey does not have an interest in the instant matter. (*Id.* at 20 ("Where the forum at issue has no local interest in the matter, it is a waste of judicial resources and an imposition on the citizens of the forum . . . to allow litigation to proceed there.").) The Court is not persuaded.

First, for reasons stated throughout this Memorandum Opinion, several instances of relevant conduct occurred in New Jersey, including: (1) negotiations and meetings between Corps and Bewegen in the years leading up to the MOU and Final Settlement, (Duffney Aff. ¶¶ 19, 21–22), (2) the storage of the parties' documents and bike sharing equipment, (*id.* ¶¶ 42, 53–55), (3) the registration and storage of assets transferred from Corps to Bewegen pursuant to the MOU, (*id.* ¶ 72), and (4) the origination of work performed by the Duffneys on behalf of Bewegen, (*id.* ¶ 56). For those same reasons, the Court notes that "[t]his is not a situation where the non-forum resident was unilaterally drawn into the forum" through no contact of its

11

own. *Grand Ent. Grp.*, 988 F.2d at 484 (noting that defendant's "affirmative actions . . . brought him in contact with [the forum state] in connection with ongoing contract negotiations with a forum[-]based entity that lasted at least four months"). Finally, contrary to Defendants' assertion, New Jersey does have an interest in protecting its citizens' contractual rights. *See id.* at 483 ("Moreover, Pennsylvania has an interest in protecting its residents from the kind of [breach of contract] conduct Grand claims the Spanish defendants engaged in." (citing *McGee v. Int'l Life Ins.*, 355 U.S. 220, 223 (1957) ("It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." If not, "[t]hese residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant [s]tate in order to hold it legally accountable."))).

The instant matter is not one of the "rare cases" in which the exercise of specific jurisdiction violates the traditional notions of fair play and substantial justice. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998). The Court, therefore, finds that Plaintiffs have met their burden of demonstrating specific jurisdiction and, accordingly, denies Defendants' Motion to Dismiss for lack of personal jurisdiction.

### B.    *Forum Non Conveniens*

In the alternative, Defendants argue that the Amended Complaint should be dismissed pursuant to the doctrine of *forum non conveniens*. According to Defendants, "[t]his action is a stranger to this forum and has no business proceeding here. None of the relevant conduct occurred in New Jersey, few if any of the documents or witnesses are located in New Jersey, and New Jersey is not a convenient forum." (Defs.' Moving Br. 15.) In opposition, Plaintiffs assert that Canada is not an adequate alternative forum, "a majority" of the evidence regarding the parties' relationship is located in New Jersey, and New Jersey has an interest in the matter. (Pls.' Opp'n Br. 18–20.)

When petitioning a court on a motion to dismiss pursuant to the doctrine of *forum non conveniens*, the defendant bears the burden of persuasion. *Lacey*, 932 F.2d at 180. First, the defendant must establish that an adequate alternative forum exists. *Id.* Second, if the defendant establishes an adequate alternative forum, it must then show that the private and public interest factors "tip[] *decidedly* in favor of trial in the foreign forum." *Id.* (emphasis added). "If, when added together, the relevant private and public factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." *Id.*

### 1.   Availability of an Adequate Alternative Forum

"Dismissal on the grounds of *forum non conveniens* presupposes the existence of an adequate alternative forum in which the plaintiff may pursue [its] claim." *Miller v. Boston Sci. Corp.*, 380 F. Supp. 2d 443, 447 (D.N.J. 2005) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). "The court's role in determining the adequacy of the proposed alternative forum is a very limited one; usually, the defendant's amenability to process in the foreign jurisdiction *and* the existence of a satisfactory remedy there are sufficient to establish a jurisdiction's adequacy." *Id.* (emphasis added) (citation omitted).

Here, Defendants rely on two arguments to demonstrate that an adequate alternative forum exists. First, Defendants note that, because of their Canadian citizenship, both Dutil and Bewegen are amendable to process in Quebec, Canada. (Defs.' Moving Br. 16.) Plaintiffs do not appear to contest this assertion. (*See generally* Pls.' Opp'n Br. 18–20.) Second, Defendants cite to a First Circuit Court of Appeals holding that despite "some differences between Canadian and American law," Canada is an appropriate alternative forum. (Defs.' Moving Br. 16 (citing *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 951–52 (1st Cir. 1991)).) Defendants, however, fail to provide any other evidence demonstrating that Canada provides Plaintiffs with the opportunity to obtain the redress they currently seek. *See Ansell Healthcare Prods. LLC v. GlycoBioSciences Inc.*, No. 16-9254,

13

2018 WL 1178043, at *4 (D.N.J. Jan. 26, 2018) ("Although [d]efendant appears to satisfy the initial burden of making itself amendable to process in Canada, [d]efendant certainly has not met its burden with regard to the second prong. . . . Here, [d]efendant fails to provide even a scintilla of evidence that Canada offers [p]laintiff an adequate remedy."); *Miller*, 380 F. Supp. 2d at 449 ("Where there is a legitimate dispute concerning the adequacy of the foreign remedy, a defendant seeking a *forum non conveniens* dismissal must generally provide *record evidence* indicating that the plaintiff could obtain proper redress in the alternative forum." (emphasis added)); *Burke v. Quartey*, 969 F. Supp. 921, 930 (D.N.J. 1997) (finding defendant failed "to support *with record evidence* the 'adequate alternative forum' component of the *forum non conveniens* claim" because he "offer[ed] no affidavits or other record evidence to show that Ghanaian or French law would permit recovery for the claims plaintiff purports to state in his complaint" (emphasis added)); *but see Baez v. Marriott Int'l, Inc.*, No. 18-1894, 2018 WL 3801251, at *2 (D.N.J. Aug. 9, 2018) (finding that defendant established an adequate alternative forum by (1) consenting to jurisdiction in the forum and (2) providing an affidavit asserting that plaintiff's claim was cognizable in the alternative forum). The Court, therefore, finds that Defendants failed to demonstrate that Canada is an adequate alternative forum for this matter. Furthermore, because "[t]hese threshold questions must be resolved before reaching other stages of the *forum non conveniens* analysis[,]" *Miller*, 380 F. Supp. 2d at 448, the Court denies Defendants' Motion to Dismiss on this ground.

### C.   Failure to State a Claim

#### 1.   Choice of Law

As a threshold matter, Defendants maintain that "there is no question that the laws of the province of Quebec must apply as there is an actual distinction between permissible claims under the laws of the province of Quebec and New Jersey which arise out of an alleged breach of contract, and because the claims have absolutely no ties to New Jersey." (Defs.' Moving Br. 21.)

14

Defendants, however, only assert that a conflict exists for Plaintiffs' promissory estoppel claim. (*Id.* at 22–23.)

"Since Plaintiffs' claims are all based on state law, at the outset the Court must determine which law to apply to Plaintiffs' claims. New Jersey's choice of law rules apply, as a federal court sitting in diversity must apply the forum state's choice of law rules." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699 (D.N.J. 2011) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "This analysis, which must be performed on an issue-by-issue basis," has two steps: (1) the Court must "determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies[,]" and (2) "if a conflict does exist, the Court must determine which state has the 'most significant relationship' to the claim[.]" *Id.* (citations omitted).

Here, Plaintiffs assert that Defendants "have not explained with any recognizable citations why a conflict of law exists[,]" and, therefore, choice of law analysis at this stage of the litigation is premature. (Pls.' Opp'n Br. 21–22.) The Court agrees. Defendants assert that Quebec law "does not recognize an independent claim for promissory estoppel in the private contract setting." (Defs.' Moving Br. 23.) Defendants, however, cite no legal authority in support of this assertion. (*See id.* at 22–23, 31.) Rather, Defendants point to an excerpt from a book on comparative law that states, "[t]he common law doctrine of promissory estoppel and the related doctrine of legitimate expectations form part of federal and provincial public law *but not part of Quebec private law*." (*Id.* at 23 (emphasis in original) (citing The Third Legal Family, *Mixed Jurisdictions Worldwide* 373 (Vernon Valentine Palmer ed., 2nd ed. 2012)).) Accordingly, the Court will not engage in a choice of law analysis at this stage of the litigation and will proceed with Defendants' Rule 12(b)(6) motion under applicable New Jersey state law. *See Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148, at *20 (D.N.J. Dec. 5, 2019) ("Because [d]efendants fail to sufficiently explain a conflict between laws of the relevant jurisdictions, the Court finds that it is

15

premature at this stage to engage in a conflict of laws analysis. As a result, the analysis of [p]laintiffs' negligent misrepresentation claim will proceed under New Jersey law."); *see also Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544, 2018 WL 4144683, at \*4 (D.N.J. Aug. 29, 2018) ("While courts in this district have . . . found choice-of-law analyses premature at the motion-to-dismiss stage, they have done so where either (i) *the defendant failed to explain why there was a conflict between the laws of different relevant jurisdictions*, or (ii) key facts relevant to a choice-of-law analysis were not available." (emphasis added)); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at \*10 (D.N.J. May 8, 2017) ("Further, [d]efendant has failed to explain how [p]laintiffs' common law claims conflict among their home states. Rather, [d]efendant simply concludes that a conflict exists and therefore the [c]omplaint must be dismissed."); *T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. 14-4209, 2015 WL 1119475, at \*5 (D.N.J. Mar. 11, 2015).

### 2.    Count One: Breach of Contract

Defendants assert that, even if New Jersey state law applies to the instant matter, Plaintiffs have failed to plausibly allege a breach of contract claim. To state a claim for breach of contract, a plaintiff must plausibly allege: (1) that the "parties entered into a contract containing certain terms"; (2) "that [the plaintiff] did what the contract required [it] to do"; (3) "that [the defendant] did not do what the contract required [it] to do, defined as a breach of contract"; and (4) "that [the defendant's] breach, or failure to do what the contract required, caused a loss to the plaintiff[]." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (internal quotation marks and citations omitted).

Defendants maintain that Plaintiffs' Amended Complaint contains "internally inconsistent and contradictory allegations which nullify an essential element of a cause of action[ that] warrant dismissal under" Rule 12(b)(6). (Defs.' Moving Br. 27.) Specifically, Defendants point to two

16

allegations in the Amended Complaint. First, Defendants note that Plaintiffs allege in one instance

that they "complied with all provisions of the MOU and are not in breach[,]" while in another state

that they "*were prepared to continue* to work as set forth in the MOU." (*Id.* at 26 (emphasis added)

(quoting Am. Compl. ¶¶ 66, 84).) Second, Defendants point to one section of the Amended

Complaint in which Plaintiffs assert that Defendants abandoned their responsibilities in the

underlying bike sharing agreements with the Bike Share Cities. (*Id.*) Defendants argue that this

assertion is contradicted by Plaintiffs' assertion in another section that states Plaintiffs "'*previously*

worked on' those responsibilities[.]" (*Id.* (emphasis added) (citation omitted).) Defendants argue,

therefore, that the Amended Complaint demonstrates that "Plaintiffs were not performing as

required by the MOU." (*Id.*; *see also id.* at 28 ("Plaintiffs cannot in one [section] allege that

Defendants breached the MOU, and in the next, admit that they were not performing

thereunder.").)

       The Court finds Defendants' argument to be tenuous at best. First, Defendants conveniently

omit the necessary context of Plaintiffs' assertions that they "were prepared to continue to work

as set forth in the MOU." In that paragraph, Plaintiffs allege that

> Dutil, through counsel, has alleged that [P]laintiffs have breached
> the MOU by their actions. However, [P]laintiffs have complied with
> all aspects of the MOU which is the only binding contract between
> the two parties. Plaintiffs provided the services as required per the
> MOU and had all assets available for purchase as requested.
> Plaintiffs were prepared to continue to work as set forth in the MOU.

(Am. Compl. ¶ 84.) Second, Plaintiffs' allegations that they "previously worked on" the Bike Share

Cities' bike sharing programs pertains to Plaintiffs' supposed reimbursement under the MOU and

Final Settlement, *not* its performance or duties under the agreements. (*See id.* ¶¶ 45–46

("Defendants' abandonment of their duties and responsibilities required [P]laintiffs to spend

resources to essentially perform the work that [D]efendants are contracted to do. Per the MOU, the work that is being done as part of the transition of assets is reimbursable.").)

More fundamentally, Plaintiff has plausibly alleged that the parties entered into the MOU and Final Settlement in March 2020 and that the agreements included, *inter alia*, terms regarding (1) the transfer of Plaintiffs' assets to Defendants, (2) the Duffneys' employment with Bewegen, and (3) Defendants' payments of Plaintiffs' open invoices. (*See generally* Am. Compl. ¶¶ 20–38; *see also* MOU and Final Settlement \*19–22.) Plaintiffs further allege that their assets were transferred to and accepted by Defendants per the MOU. (*Id.* ¶¶ 29–30.) According to Plaintiffs, however, Defendants have failed to pay "any portion of the $500,000.00 total [asset] payment." (*Id.* ¶ 30.) Furthermore, Plaintiffs maintain that Defendants did not complete its open invoice payments or pay the Duffneys as required by the MOU and Final Settlement. (*Id.* ¶¶ 47–48.) Finally, in addition to monetary damages, Plaintiffs assert that Defendants' breach of the MOU and Final Settlement has, *inter alia*, (1) resulted in the laying off of over fifty Corps employees, (2) "forced the warehouse which housed the subject bikes to threaten eviction proceedings[,]" and (3) brought Corps to "near extinction[.]" (*Id.* ¶¶ 59–60, 64.) The Court, therefore, finds that Plaintiffs have plausibly alleged a breach of contract and, accordingly, denies Defendants' Motion to Dismiss Count One of the Amended Complaint.

### 3.   Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants next assert that New Jersey law mandates dismissal of Plaintiffs' breach of the implied covenant of good faith and fair dealing claim because it is duplicative of Plaintiffs' claim for breach of contract. (Defs.' Moving Br. 29–31.) In opposition, Plaintiffs argue that this count relates to Dutil's alleged bad faith conduct that took place after the initial breach of the MOU and Final Settlement. (Pls.' Opp'n Br. 25–26 ("Above and beyond [D]efendants' failure to pay, [D]efendants acted in bad faith by . . . stating that they would pay *after* they initially breached the

MOU and [Final Settlement], threatening litigation, ransacking Corps Logistics[,] and blatantly enjoying the stolen assets of Corps Logistics." (emphasis in original)).)

Every contract in New Jersey contains an implied covenant of good faith and fair dealing. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). This independent duty can be breached absent a breach of the underlying contract's express terms. *Id.* Under this covenant, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane*, 228 F.3d at 288. A plaintiff, however, may not allege a claim for breach of the covenant of good faith and fair dealing if it is duplicative of its breach of contract claim. *Adler Eng'rs, Inc. v. Dranoff Props., Inc.*, No. 14-921, 2014 WL 5475189, at *11 (D.N.J. Oct. 29, 2014) (quoting *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009)).

While the redundancy question is admittedly close, the Court declines to dismiss Count Two at this stage of the litigation. The Amended Complaint plausibly alleges that, once the MOU and Final Settlement were initially breached, Dutil "still asked [P]laintiffs to continue the transition of assets" and promised that the requisite payments were coming. (Am. Compl. ¶¶ 49–51.) Plaintiffs further allege that once the MOU and Final Settlement were initially breached, Defendants threatened Plaintiffs with legal action, accessed Corps's warehouses without authorization, stole property, and failed to pay the bike share system's insurance policies, an expense that fell upon Plaintiffs. (*Id.* ¶¶ 53, 55–56.) Although Plaintiffs cite "Defendants' failure to make payments" under the MOU and Final Settlement in support of Count Two, (*id.* ¶ 73), the Court finds that the Amended Complaint's factual allegations adequately allege that Count Two is

distinct from Count One. Accordingly, the Court denies Defendants' Motion to Dismiss Count Two of the Amended Complaint.

### 4.   Count Three: Promissory Estoppel

Defendants also argue that Plaintiffs' promissory estoppel claim "falls squarely within the requested relief for breach of contract" and should therefore be dismissed. (Defs.' Moving Br. 31–32.) As Plaintiffs correctly argue, however, breach of contract and promissory estoppel may be alternatively pled. (Pls.' Opp'n Br. 26); *see also* Fed. R. Civ. P. 8(a)(3); *White Winston Select Asset Funds, LLC v. Intercloud Sys., Inc.*, 619 F. App'x 157, 163 n.8 (3d Cir. 2015). Nonetheless, promissory estoppel cannot be enforced when a court finds that the parties have entered into an enforceable contract. *See Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) ("Generally, this doctrine is invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise. . . . In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted."); *see also Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 WL 423446, at *14 (E.D. Pa. Feb. 14, 2008) ("Thus, the promissory estoppel claim must fail only if and when the court finds that a valid contract exists.").

Here, although Plaintiffs have adequately *pled* a claim for breach of contract, the Court does not, at this time, find that a valid contract between the parties exists. Importantly, Defendants maintain that Dutil is not a party to several provisions of the MOU or the entire Final Settlement. (Defs.' Moving Br. 5, 38–40.) The Court, therefore, denies Defendants' Motion to Dismiss Count Three of the Amended Complaint.

### 5.   Count Four: Declaratory Judgment

Next, Defendants argue that the "declaratory relief sought [by Plaintiffs] is redundant of the request for relief in the breach of contract claim." (*Id.* at 33–34 ("As each of these requests for

a declaration concern past conduct, which are subsumed by the breach of contract claim, they are improper, and this claim must be dismissed.").) The Court agrees. Plaintiffs seek declaratory judgment stating Defendants breached the MOU and Final Settlement by failing to make the requisite payments. (Am. Comp. 14.) In opposition, Plaintiffs assert Count Four is not duplicative of Count One because, in addition to requesting a declaration stating that Defendants breached the MOU and Final Settlement, it also requests a declaration that Plaintiffs did not. (Pls.' Opp'n Br. 27.) As discussed above, an element of a breach of contract claim is that the plaintiff satisfied its obligations under the contract in question. *Globe Motor*, 139 A.3d at 64. The Court, therefore, finds that Plaintiffs' claim for declaratory judgment is duplicative of its claim for breach of contract and, accordingly, grants Defendants' Motion to Dismiss Count Four of the Amended Complaint.

### 6.   Count Five: Breach of the Duffneys' Employment Agreements

Defendants contend that Count Five, which alleges a breach of the Duffneys' employment agreements, is also duplicative of the breach of contract claim and, therefore, should be dismissed. (Defs.' Moving Br. 34.) Count Five pertains to the Duffneys' employment agreements contained in the MOU and seeks an award, based on Defendants' breach, of all guaranteed wages. (Am. Compl. ¶¶ 91–98.) On the other hand, Count One alleges Defendants breached the MOU and requests, *inter alia*, an award of "total amounts owed" by Defendants to Plaintiffs. (*Id.* ¶¶ 65–71.) The Court cannot discern how these counts, which relate to Defendants' alleged breach of the MOU and seek awards of payments required under the agreement, are different. "It is well-recognized that a court may dismiss a duplicative claim in a complaint." *Blake Gardens, LLC v. New Jersey*, 309 F. Supp. 3d 240, 248 (D.N.J. 2018) (quoting *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *22 (D.N.J. May 2, 2013)). The Court, accordingly, grants Defendants' Motion to Dismiss Count Five of the Amended Complaint.

**D.      Damages**

      **1.      Punitive Damages, Consequential Damages, and Attorneys' Fees**

Defendants also seek to bar Plaintiffs' requests for punitive and consequential damages and attorneys' fees. (Defs.' Moving Br. 37–38.) Defendants first argue that breaches of contract generally do not warrant punitive damages and, therefore, such damages should be stricken from the Amended Complaint. (*Id.* at 37–38.) Next, Defendants contend that Plaintiffs have failed to adequately allege "that the particular [consequential] damages [they seek] were fairly within the contemplation of the parties to the contract at the time it was made. Under such circumstances, these damages are not recoverable." (*Id.*) At pleading stage, however, the Court will decline "to resolve factual and legal issues regarding the availability" of damages. *Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 WL 5771400, at \*16 (D.N.J. Sept. 30, 2015) (denying motion to strike request for consequential damages at motion to dismiss stage and noting that motions to strike from a pleading under Rule 12(f) are "generally disfavored and will be denied unless it is clear that under no circumstances could the demand succeed"); *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 513 (D.N.J. 1999) ("[Although] the circumstances of a breach [of contract] must be quite extreme to merit punitive damages, this Court cannot hold—at this nascent stage in the litigation—that [the plaintiff] can prove no set of facts that might warrant punitive damages.").

Defendants next argue that "Plaintiffs are not entitled to attorneys' fees because they have failed to identify 'any statute, court rule, or contract authorizing an award of attorneys' fees in this case,' and neither the MOU nor Final Settlement . . . provide for a recovery of attorneys' fees." (Defs.' Moving Br. 38 (citing *Johnson v. State Farm Fire & Cas. Co.*, No. 18-15209, 2019 WL 2285491, at \*2 (D.N.J. May 29, 2019)).) The Court agrees. Plaintiffs seek attorneys' fees for every count of the Amended Complaint but fail to provide any statutory or contractual basis for such relief. (*See generally* Am. Compl. 9–15); *see also Alpine E. Elec., LLC v. Mod. Grp. Ltd.*,

No. 17-5726, 2018 WL 3159881, at *1–2 (D.N.J. Mar. 19, 2018) (granting motion to dismiss plaintiff's request for attorneys' fees for failing to cite court rule, statute, or contract provision authorizing such an award). Plaintiffs do not appear to contest Defendants' Motion on this ground, and instead "reserve their right to seek attorneys' fees per a separate application if needed." (Pls.' Opp'n Br. 29.) Accordingly, the Court will grant Defendants' Motion to Dismiss Plaintiffs' request for attorneys' fees.

### 2.    Dutil's Damages

Finally, Defendants contend that the plain language of the MOU and Final Settlement demonstrate that a personal guarantee "by Dutil, if any, was limited to the payment terms [regarding Corps's assets] contained in paragraph three of the MOU." (Defs.' Moving Br. 39.) Defendants, accordingly, argue that "to the extent Plaintiffs seek recovery from Dutil outside of that limited provision, such claims must be dismissed." (*Id.*) Both parties, however, note that Dutil signed both the MOU and Final Settlement. (*Id.* at 39–40; Pls.' Opp'n Br. 29–30.) Again, at this early stage of the litigation, the Court declines to dismiss Plaintiffs' claims on this ground, particularly before a detailed factual record has been established.

### IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp, U.S.D.J.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE